## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 9:18-cv-80581

**PLAIN BAY SALES, LLC,**
**a Florida limited liability company,**

           **Plaintiff,**

**v.**

**ZUME GALLAHER and**
**PAUL HAUNERT,**

           **Defendants.**

_____/

## MOTION BY PLAINTIFF
## TO STRIKE
## CERTAIN AFFIRMATIVE DEFENSES

**I.**      **L.R. 7.3 Certificate of Consultation and Conference.**

On March 5, 2019, Plaintiff's counsel dispatched correspondence outlining the above-stated concerns with Defendants' Affirmative Defenses.  A week later, on March 12, 2019, counsel telephonically discussed the concerns. The parties agreed that, should this matter proceed to trial, it was likely Defendants would not present all of their Affirmative Defenses to the Jury, but that the Defense and Plaintiff desired to preserve and brief their respective positions on the defenses now, to alert the Court and counsel of their positions.  After further discussion during the March 12th conference, the defenses were divided into the Affirmative Defenses attempting to invoke California law (the 1st, 22nd, 23rd, 24th, 25th and 26th) (the "California Defenses") and the balance of the defenses.  The parties agreed that the Court may reserve ruling on the balance of the defenses until at or nearer the time of trial, while Plaintiff seeks a ruling on the California Defenses now, in order to narrow the issues and focus discovery.  See, e.g.: See, e.g.: *White v. Det. DeLaOsa,* Case 1:07-cv-23381-ASG (S.D.Fla. April 25, 2011 *5) (Goodman, U.S.M.J) [Document 100 therein] ("To avoid wasting any more time or resources, I am permitting Defendant to amend his affirmative defenses now"); *HCRI TRS Acquirer, LLC v. Iwer*, 708 F. Supp.2d 687, 691 (N.D. Ohio. 2010).

With that report of the consultation and conference pursuant to L.R. 7.3, Plaintiff Plaintiff

Plain Bay Sales, LLC ("Plain Bay") hereby respectfully request the Court strike or redesignate as mere denials certain Affirmative Defenses interposed by Defendants Zume Gallaher ("Gallaher") and Paul Haunert ("Haunert") as follows below.

## II.   Relevant Pleadings and Facts.

### a.   The Pleadings.

The Complaint [DE 1] was filed in this matter May 3, 2018, followed by Motions to change venue [DE 12] and to Dismiss [DE 13] by Mr. Haunert.   The Court denied the Motion to change venue [DE 30] on July 10, 2018.   Ms. Gallaher filed a Motion to Dismiss [DE 34] July 13, 2018. On August 23, 2018 [DE 37] the Court granted and denied in part the Motions to Dismiss. The Amended Complaint [DE 38] was filed August 31, 2018, whereupon Haunert and Gallaher each filed a Motion to Dismiss the Amended Complaint [DE 39, 40] on September 14, 2018. Plaintiff voluntarily dismissed Counts V and X of the First Amended Complaint on September 28, 2018 [DE 42].   Haunert and Gallaher have since filed, on February 21, 2019, their Answer to the Amended Complaint [DE 73] which was formerly subject to Defendants' Motions to Dismiss [DE 39, 40], thus abandoning those pleadings and their Motions to Dismiss [DE 39,40].   A "Counterclaim/Third Party Claim" [DE 50] was also filed on December 21, 2018 which is presently subject to a Motion to Dismiss [DE 63].

### b.   Nature of the Action

The underlying matter concerns the sale by Plain Bay to Gallaher Gallaher, and the wrongful attempts at revocation of acceptance, repudiation or rejection, after acceptance by Gallaher, of the horse "Victorio 5" ("Victorio" or the "Horse). The matter also involves the tortious acts by a third party, Haunert, who interfered with the transaction and the rights of Plaintiff, and to the detriment of Plaintiff and Co-defendant Gallaher. [DE 1 ¶ 1].   The Amended Complaint alleges Defendants wrongfully rejected Victorio, revoked acceptance of the Horse and wrongfully seek to repudiate the contract for the purchase and sale of Victorio. Several reputable horseman and Olympians attest to the quality of the Horse therein. Defendants allege in their Counterclaim that that Plain Bay, together with its officers and Prudent family members, from Florida, conspired to and did defraud Gallaher and Haunert in the Victorio transaction because the Horse was not suitable for Gallaher. [DE 50].

### III.   Legal Argument.

#### A.   Defendants' Amended Affirmative Defenses are properly subject to a Rule 12(f) Motion to Strike for failure to comply with Rule 8(c).

Upon pleading their Affirmative Defenses [DE 73], the Defendants have specified twenty-six (26) alleged Affirmative Defenses and also attempted to to seek attorney's fees at page 18 of their Answer and Affirmative Defenses and Counterclaim to the Amended Complaint.   This motion is only brought after consultation with counsel pursuant to L.R. 7.3 as discussed at the top of this Motion.

In 2017, in the Southern District of Florida, Judge Torres adroitly framed a cogent and balanced perspective on such motions when granting a motion to strike affirmative defenses in a breach of contract case:

> A "defendant must allege some additional facts supporting the affirmative defense."   *Cano v. South Florida Donuts, Inc*., 2010 WL 326052, at *1 (S.D. Fla. Jan. 21,  2010). Affirmative defenses will be stricken if they fail to recite more than bare-bones   conclusory   allegations.   See *Merrill   Lynch   Bus.   Fin.   Serv.   v. Performance Mach*. Sys., 2005 WL 975773, at *11 (S.D. Fla. March 4, 2005) (citing *Microsoft Corp. v. Jesse's Computers & Repair, Inc*., 211 F.R.D. 681, 684 (M.D. Fla. 2002)).   "An affirmative  defense  may also be stricken as insufficient if: '(1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of  law.'" *Katz*, 2013 WL 2147156, at *1 (citing *Blount v. Blue Cross and Blue Shield of Fla., Inc.,* 2011 WL 672450 (M.D. Fla. Feb.17, 2011)).   **"Furthermore, a court must not tolerate shotgun pleading of affirmative defenses, and should strike vague and ambiguous defenses which do not respond to any  particular  count, allegation  or legal basis of a complaint."** *Morrison   v.   Exec.   Aircraft   Refinishing,   Inc.*, 434 F.Supp.2d  1314,  1318  (S.D.  Fla.  2005). [emphasis added].

*Merrill Lynch Bus. Fin. Serv. v. Performance Mach. Sys*., No. 04-60861, 2005 WL 975773, at *11 (S.D. Fla. March 4, 2005) [1].

---

[1] While unpublished opinions are not considered binding authority, they may be cited as persuasive authority, pursuant to Eleventh Circuit Rules. 11th Cir. R. 36-2.

3

### 1. Yes, Motions to Strike Affirmative Defenses are Generally Disfavored, But this Motion Serves the Purpose of Conserving Judicial and Parties' Resources.

Plaintiff is aware that motions to strike are generally disfavored and does not seek to strike all of the Affirmative Defenses at this time.   However, a present ruling on the California Defenses is necessary to narrow the issues for trial and focus discovery, while a later ruling on the other, certain of the Affirmative Defenses, is necessary at trial because they are either are deficient or redundant of either the denials in the Answer or of the Counterclaims interposed by Defendants. See, e.g.: *HCRI TRS Acquirer, LLC,* supra, 708 F. Supp.2d at, 691.

As well,   with respect to the defenses to the tort claims, Plaintiff is not requesting the Court apply a heightened standard of pleading ala *Twombly* (and which is not the standard for Rules 8(b) and 8(c) motions), but rather, Plaintiff requests the Court apply some modicum of rationality to certain affirmative defenses interposed by Defendants because they are legally defective or duplicative and should not be presented to the Jury. See, e.g.: *White v. Det. DeLaOsa,* Case 1:07-cv-23381-ASG (S.D.Fla. April 25, 2011 *5) (Goodman, U.S.M.J) Document 100 Entered on FLSD Docket 04/25/11 ("To avoid wasting any more time or resources, I am permitting Defendant to amend his affirmative defenses now").

Those defenses Plaintiff attack do not raise any new issues not already mentioned by Defendants in their Answer or in the "Counterclaim/Third Party Claim" [DE 73, 50].   Judge Bloom of this Southern District has cogently explained that in this Circuit, affirmative defenses must bring something new to the table and not merely reiterate previously-stated claims:"'[T]he Eleventh Circuit has stressed providing notice as the purpose of Rule 8(c): "[t]he purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of ***any additional issue*** that may be raised at trial so that he or she is prepared to properly litigate it.' *Jackson v. City of Centreville,*

4

269 F.R.D. 661, 662 (N.D. Ala. 2010) (quoting *Hassan v. USPS*, 842 F.2d 260, 263 (11th Cir. 1988)).” *Laferte v. Murphy Painters, Inc.,* Case No. 17-CIV-60376-BLOOM/Valle (S.D.Fla., June 12, 2017 *4-5) [emphasis added].   It so follows that an affirmative defense that does not raise an additional issue not already raised by the Defendants in their other pleadings are redundant and properly subject to be stricken or recast and denials.   *Id.*

### B.      Certain Affirmative Defenses Which Should be Stricken or Recast as Denials.

### “The California Defenses”

Plaintiff respectfully seeks a ruling at this time upon these defenses subject to the within Motion.

### The First, Twenty-Second, Twenty-Third, Twenty-Fourth, Twenty-Fifth and Twenty Sixth Affirmative Defenses

These seek to recycle Defendants' lost venue arguments, previously decided by this Court last July [DE 30], by invoking California law.   Defendants premise their invocation of California law upon the allegations in footnote 1 of the Twenty-Second Affirmative Defense, that “California law has the most significant relationship to Plaintiff's tort claims” and to the “rights and liabilities of the parties.”

This Court has already decided otherwise many months ago, on July 11, 2018 [DE 30], when the Court considered jurisdiction and venue for this matter, and decided that the location of the operative facts was in *both California and Florida* and that transfer to California was not appropriate:

> When the acts alleged in a tortious interference claim occur in one District, and the company affected by the tortious interference is located in another district, the locus of operative facts does not weigh in favor of either forum. See *Conseal Intern. Inc. v. Econalytic Systems, Inc.*, No. 09–60477–CIV., 2009 WL 1285865, at *3 (S.D. Fla. May 8, 2009) (holding that, where the defendant's communication constituting tortious interference with the plaintiff company occurred in Colorado and plaintiff was a company located in Florida, the locus of operative facts did not favor either forum). Accordingly, this factor does not weigh in favor of transfer, because Haunert interfered with Plaintiff

from California, but Plaintiff is a company located in Florida.   [DE 30 *7].

This is also particularly true for the First Affirmative Defense, which claims that "venue is improper" because "documentary evidence is in California, among other reasons."  This has already been decided by the Court against Defendants last July, 2018:

> Haunert bears the burden of persuading the Court that a transfer should be granted, yet he has not provided any details regarding documents that are present in California which would be burdensome to produce in Florida. Instead, they have merely claimed that "documentary evidence (other than the Bill of sale) is in California," so this Court finds that this factor does not weigh in favor of transfer. [DE 12 at 6]" [DE 30 * 4-5]

> While the Defense might argue that there is a distinction between venue and choice of law, the stated position of the Defense, that California law should be applied by this Court sitting in Florida, to some but not all of the facts and claims, is inapposite to the previous venue ruling of the Court [DE 30].   That ruling was based upon measured consideration of the Court that the facts of the case lie in Florida as well as in California and that on balance, there is no reason, more than a reason for Florida, for the case to be in California, and presumably tried under California law. [DE 30 *7].

> There is no choice of law provision in the transaction document, the Bill of Sale, in this case.   However, as the Court pointed out, Plaintiff was in Florida at the time of the transaction.  Further, Defendants have raised, in their "Counterclaim/Third Party Claim" certain claims based upon specific Florida law, being:

Count VI – violation of FDUTPA under F.A.C. 5H-26.003;

Count VII – violation of FDUTPA under F.A.C. 5H-26.004;

Count VIII – violation of F.S. § 501.142;fn1

---

1 Presently subject to Plaintiff's Motion for Bond requiring Defendants to post a bond for Plaintiff's attorney's fees and costs.

Count XII – for attorney's fees under Florida RICO; and

Count XIII – for declaration of privileged communications under Florida law.

These claims of *Defendants* rely upon Florida law and therefore Florida law should be utilized to interpret the contact and the alleged breaches and acts by Plaintiffs.   See, e.g.: *Wausau Underwriters Ins. Co. v. Baillie*, 281 F. Supp. 2d 1307 (M.D. Fla. 2002).   In *Wausau,* the Middle District of Florida recognized a corollary to the doctrine of *lex loci contractus* often utilized by Florida courts where strict application of lex loci contractus would not be appropriate. *Id*. at 1312. In that case, the insured's recovery was premised upon a Florida-specific uninsured motorist's provision and the court found the argument that "Florida law should be used to interpret a policy provision based upon a Florida statute" to be compelling. *Id*. at 1312-13.

Defendants are requesting *Florida law* be used in five counts of their "Counterclaim/Third Party Claim."   They have conceded that Florida law is the most appropriate law to apply to the dispute herein.

Further, as to Defendants' other tort claims, Florida has adopted the "significant relationships test," of the Restatement (Second) of Conflict of Laws §§ 145-46 (1971). *Bishop v. Florida Specialty Paint Co*., 389 So. 2d 999 (Fla.1980). That choice of law principle calls upon the court to determine controversies in accord with the law of the jurisdiction with the "most significant relationship to the occurrence and the parties under the principles stated." *Id*. at 1001 (citing Restatement (Second) of Conflict of Laws § 145).   In addition, the court should take into account certain contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties centered." *Id.*

7

Taking those factors into account, the California Defenses do not set out a cogent reason why California law is any more appropriate than Florida law for application to the facts of this suit.   Nevertheless, Defendants want to cherry-pick California law, which presumably better suits their litigation position, and would have the Court apply California law to some facts and claims, but not to others, even though Defendants invoke *Florida law* for five counts of their "Counterclaim/Third Party Claim." Respectfully, it serves the interest of the Court and the parties to remove any uncertainty as to choice of law now and decide that Florida law governs, while discovery progresses, to avoid unnecessarily legal issues and over-broad discovery.

To conserve resources and focus discovery, Plaintiff respectfully requests the Court enter an Order now, striking the California Defenses before the matter progresses further.

### The Balance of the Defenses

The parties intend to brief these issues and respectfully request a ruling on these defenses at or nearer the time of trial.

### The Second Affirmative Defense

This defense is a "failure to state a claim" argument, dressed up as an affirmative defense, directed towards Plaintiff's breach of contract claims.   The allegations advanced by Defendants in that "defense" is that Plaintiff acted fraudulently.   These are allegations contained in the Counterclaim [DE 50] and belong there, not as an affirmative defense.   Failure to state a claim is not an appropriate defense, and the Court should treat it as a denial. See *Home Mgmt. Sols. Inc. v. Prescient, Inc.*, 2007 WL 2412834, at *3 (S.D. Fla. Aug. 21, 2007) (citing *Ohio Nat'l Life Assur. Corp. v. Langkau,* 2006 WL 2355571, at *2 (M.D. Fla. Aug. 15, 2006)); see also *Premium Leisure, LLC v. Gulf Coast Spa Mfrs., Inc.,* 2008 WL 3927265, at *3 (M.D. Fla. Aug. 21, 2008) ("The [] affirmative defense . . . that Premium Leisure has failed to state a claim. . . . is a denial of Premium

8

Leisure's claim, rather than an affirmative defense. As such, the Court will treat it as a denial and not strike it.") (internal citation omitted); see also *Gonzalez v. Spears Holdings, Inc*., No. 09-60501-CIV, 2009 WL 2391233, at \*2 (S.D. Fla. July 31, 2009) (citing In re *Rawson Food Serv., Inc*., 846 F.2d 1343, 1349 (11th Cir. 1988) (it is not an affirmative defense simply to state "Plaintiff has failed to state a cause of action upon which relief can be granted").

### The Third Affirmative Defense

This defense claims that Plaintiff "waived any right to money provided by Defendants because Plaintiff fraudulently induced Defendants into the agreement to purchase the Horse." [DE 73 \*10].   The affirmative defense of waiver requires certain elements to be proven.   See, e.g. Fl.Civ.Jur.Inst. 416.30 and citations thereunder: ("The elements necessary to establish waiver are: the existence of a right, privilege, or advantage; the actual or constructive knowledge thereof; and an intention to relinquish that right, privilege, or advantage.   *Bueno v. Workman*, 20 So.3d 993, 998 (Fla. 4th DCA 2009); *Winans v. Weber*, 979 So.2d 269, 274 (Fla. 2d DCA 2007).There can be no waiver if the party against whom the waiver is invoked did not know all of the material facts, or was misled about the material facts.   *Winans v. Weber*, 979 So.2d 269, 274 (Fla. 2d DCA 2007); *L.R. v. Dep't of Children & Families*, 822 So.2d 527, 530 (Fla. 4th DCA 2002). Proof of the elements of waiver may be express or implied from conduct or acts that lead a party to believe a right has been waived.   *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So.2d 707, 711 (Fla. 2005); *LeNeve v. Via S. Fla., L.L.C*., 908 So.2d 530, 535 (Fla. 4th DCA 2005)").

Herein this "defense" Defendants merely repeat the allegations of the Counterclaim that Plaintiffs acted fraudulently and should not be allowed to retain the purchase proceeds. [DE 50]. Because this "defense" both fails to aver the elements of waiver and fails to identify some *new* issue, it is not an affirmative defense, is redundant of the Counterclaim, and should be stricken.

9

*Laferte,* supra.

## **The Fourth Affirmative Defense**

This "defense" claims that "the parties were unable to conclude the sale of the Horse as initially agreed" because of alleged misrepresentations by Plaintiff. [DE 73 * 11].   This allegation is contained at numerous points in the Counterclaim and in the Answer to the Amended Complaint. It is not a defense because it does not identify any new issue and merely repeats the denials and allegations in the Answer and Counterclaim. *Laferte,* supra.

## The Fifth Affirmative Defense

This "defense" claims that Plaintiff "abandoned the alleged contract by selling the Horse to an unrelated third party." [DE 73 * 11].   This is essentially a denial of Plaintiff's right to exercise Seller's Remedies pursuant to F.S. § _____, and was raised as an issue by Defendants in their Motions to Dismiss [DE 39, 40], wherein they attached a redacted copy of a letter from Plaintiff's counsel informing Defendants of Plain Bay's election to exercise those statutory remedies.   Further, the election of statutory Seller's Remedies is not an act inconsistent with the existence of a contract.   Defendants cannot and have not the elements of abandonment of contract in their "defense."   To constitute abandonment by conduct, the action relied upon must be positive, unequivocal, and inconsistent with the existence of the contract. *Painter v. Painter,* 823 So. 2d 268 (Fla. Dist. Ct. App. 2002); *Bilow v. Benoit,* 519 So. 2d 1114 (Fla. Dist. Ct. App. 1988); *Gustafson v. Jenson*, 515 So. 2d 1298 (Fla. Dist. Ct. App. 1987).   Therefore, as plead, the "Fifth Affirmative Defense" is not an affirmative defense at all., but a mere denial and should be recast as such.

## The Seventh Affirmative Defense

This "defense" claims the contract is "void or voidable and subject to rescission because Defendants were fraudulently induced…." [DE 73 *12].   This is the same claim raised by Defendants in Count IX of their Counterclaim [DE 50], is therefore redundant and not a true defense and should be stricken.

## The Eighth Affirmative Defense

This "defense" claims that "any agreement to pay was passed on mutual mistake, in that Plaintiff fraudulently misrepresented the nature and condition of the Horse…."   This is not an affirmative defense, but rather is a counterclaim.   A counterclaim of this nature already exists

in the "Counterclaim/Third Party Complaint" of Defendants [DE 50, Count I] and   therefore this "defense" is nothing more than redundancy and excess verbiage.  It should be struck as such. Additionally, it fails to aver any of the factual or legal elements of mutual mistake as a defense in in that they did not and cannot allege that Defendants did not bear the risk of mistake.   Defendants have admitted were accompanied by their own entourage of professional horse trainers at the time of their inspection and selection of Victorio and also employed numerous veterinarians to examine the Horse. [DE 50 ¶¶ 40-78].    Haunert claims expertise in this area. "A party may avoid a contract by proving mutual mistake regarding a basic assumption underlying the contract. However, to prevail on this basis the party must also show he did not bear the risk of mistake."  Florida Jury Instruction 416.25, citing *Leff v. Ecker*, 972 So.2d 965, 966 (Fla. 3d DCA 2007) [citation omitted in original].

## The Ninth Affirmative Defense

This "defense" claims that "any agreement to pay was passed on unilateral mistake, in that Plaintiff fraudulently misrepresented the nature and condition of the Horse…."   This is not an affirmative defense, but rather is a counterclaim.   A counterclaim of this nature already exists in the "Counterclaim/Third Party Complaint" of Defendants [DE 50, Count I] and   therefore this "defense" is nothing more than redundancy and excess verbiage.  It should be struck as such. Additionally, it fails to aver any of the factual or legal elements of mutual mistake as a defense in in that they did not and cannot allege that Defendants did not bear the risk of mistake.   Defendants have admitted were accompanied by their own entourage of professional horse trainers at the time of their inspection and selection of Victorio and also employed numerous veterinarians to examine the Horse. [DE 50 ¶¶ 40-78].    Haunert claims expertise in this area. "A party may avoid a contract by proving mutual mistake regarding a basic assumption underlying the contract. However, to

12

prevail on this basis the party must also show he did not bear the risk of mistake."   Florida Jury

Instruction 416.26, citing *Leff v. Ecker*, 972 So.2d 965, 966 (Fla. 3d DCA 2007) [citation omitted

in original], citing Sections 153 and 154 of the Restatement (Second) of Contracts (1979), which

provides

> § 154. When a Party Bears the Risk of a Mistake.
>
> A party bears the risk of a mistake when
>
> (a)      the risk is allocated to him by agreement of the parties, or
> (b)      he is aware, at the time the contract is made, that he has only limited knowledge
> with respect to the facts to which the mistake relates **but treats his limited knowledge as
> sufficient,** or
> (c)      the risk is allocated to him by the court on the ground that it is reasonable in the
> circumstances to do so. [emphasis added].

### The Tenth Affirmative Defense

This "defense" claims "lack of consideration" and is duplicative of the Second Affirmative

Defense, and therefore should be struck.

### The Eleventh Affirmative Defense

This "defense" claims the alleged fraud of Plaintiff "hindered performance by Defendants,

preventing or making it impossible for the sale to conclude as contemplated by the parties…."

This is not an affirmative defense because Florida law recognizes an action for fraudulent

misrepresentation, and Defendants have already alleged that action in their "Counterclaim/Third

Party Complaint." [DE 50, Count I].   Therefore, this is not a true affirmative defense and is

redundant of issues raised in Defendants' other pleading.

### The Fourteenth Affirmative Defense

This "defense" claims the Plaintiff " has been unjustly enriched because of "intentionally

made false statements."   This is not an affirmative defense because Florida law recognizes

actions for fraudulent misrepresentation and unjust enrichment, and Defendants have already alleged those claims in their "Counterclaim/Third Party Complaint." [DE 50, Count I, Count IX]. Therefore, this is not a true affirmative defense and is redundant of issues raised in Defendants' other pleading.

## The Fifteenth, Sixteenth and Seventeenth Affirmative Defenses

These are collectively, duplicative of the three "Breach of Warranty" causes of action already alleged in the "Counterclaim/Third Party Complaint." [DE 50, Counts III, IV and V]. They do not admit the Amended Complaint and bring no new issues to the case. Thus they should also be stricken.

## The Eighteenth Affirmative Defense

This "defense" should be stricken because it misstates the law in Florida.   Defendants cite the case *Bruce v Am. Dev. Corp.,* 408 So.2d, 357, 358 (3d DCA 1982) for a proposition of law that "There can be no interference with a contractual relationship where the action complained of is undertaken to safeguard or promote one's financial interest."   The Defendants have two problems with this defense as a proper statement of the law in Florida:

First, Defendants omit the point that *Bruce* relies upon the fact that the party invoking the defense was a *party* to the transaction in question.   The same is not true of Haunert.   Haunert was a stranger to the Plain Bay Sales-Gallaher transaction.   He was not in privity, nor an intended third party beneficiary.

The second problem with this "defense" is that the citation to the *Bruce* case overlooks that *Bruce* specifically cited to *Ethyl Corporation v. Balter*, 386 So.2d 1220, 1224-1225 (3d DCA 1980), which expressly states that "… [Balter's] contentions also founder upon the principle, to which we have already referred, that a cause of action for interference does not exist against one

14

who is himself a party to the contract allegedly interfered with…."  Further, Haunert does not claim any interest in the Victorio transaction, nor in any contract with Gallaher which he is protecting.   This distinguishes Haunert from the defendant in *Ethyl Corporation,* where that party had averred certain financial obligations which it was protecting *in the relevant transactions at issue.* (" At all times, its actions were reasonably directed to the recovery of the very substantial sums it was owed by Pac-Craft, to the protection of its status as the co-obligor with the corporation on a $450,000 loan it was later required to pay, and, finally, as the lawful holder of 100% of its stock."). *Id.*   In contrast, Haunert has no justification for interference to protect his alleged more generalized interest in his continued employment by his employer, Gallaher, and the *Bruce* case does not stand for the "defense" for a right to protect generalized financial interests.

### The Nineteenth Affirmative Defense

This "defense" should be stricken because it also misstates the holding of the case upon which it relies, *Scussi v. Balter,* 386 So.2d 1227 (3d DCA 1980) and misstates the proper application of other authority cited therein.   Haunert claims that *Scussi* stand for the premise that he can successfully defend because he was "[a]n agent who properly fulfills duty of providing 'honest advice' to principal prevents claim for tortious interference with a business relationship." But *Scussi* did not come to that conclusion, but rather just the opposite:

> Scussi secondly suggests that his actions were protected by the privilege afforded an agent [fn omitted] who, upon request, gives "honest advice" that it is in his principal's best interests to breach an existing relationship. See 4 Restatement (Second) of Torts § 772(b) (1979). **We find, however, that the showings in the record of Scussi's active involvement in Wolf's affairs and of his personal motivations and ulterior purposes for securing Wolf's withdrawal from his undertaking with Balter demonstrate the inapplicability of this principle.** See *London Guarantee & Accident Co. v. Horn,* 206 Ill. 493, 69 N.E. 526 (1903); *Morgan v. Andrews,* 107 Mich. 33, 64 N.W. 869 (1895); W. Prosser, Law of Torts § 129 text and authorities at 944, nn. 5-7 (4th ed. 1971). [emphasis added].

*Scussi,* supra, 386 So.2d 1228-1229.

This "defense" is nothing but a mere denial of the allegations of the Amended Complaint, which allege personal motivations and ulterior motives by Haunert [DE 38 ¶¶ 46-50] should be stricken as both redundant and a misstatement of the law or recast as a mere denial. defense" for a right to protect generalized financial interests.

### The Twenty-First Affirmative Defense

This "defense" should stricken because it does nothing more than state that the FDUTPA claims were improperly alleged, stating the claim are "barred for failure to sufficiently allege all necessary elements and factual information to support such claims."   This "defense" is not even a mere denial, but rather is some sort of recycled grounds to dismiss the FDUTPA counts, which have already been considered and denied previously by this Court in August of 2018 ("Plaintiff has adequately alleged that Haunert circulated deceptive information about Victorio which allegedly caused Gallaher to refuse shipment of Victorio in violation of the agreement between Plaintiff and Gallaher, which resulted in damages to Plaintiff. This is adequately plead. Therefore, the Motion to Dismiss as to Count XIII is denied.") [DE 37 * 10].   Even under the liberal reading of Rule 8(c), this is not a defense.

An affirmative defense that does not provide "fair notice" of the nature of the defense asserted and the grounds upon which it is based is not sufficient and therefore must be stricken. Therefore, although motions to   strike tend to be disfavored by courts, see *Williams v. Jader Fuel Co.,* 944 F.2d 1388, 1400 (7th Cir.1991), an affirmative defense may be stricken if the defense is "insufficient as a matter of law*." Microsoft Corp. v. Jesse's Computers & Repair, Inc.,* 211 F.R.D.

681, 683 (M.D. Fla. 2002) citing *Anchor Hocking Corp. v. Jacksonville Elec. Auth*., 419 F. Supp. 992, 1000 (M.D. Fla. 1976). A defense is insufficient as a matter of law if either: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law. *Id*.

The U.S. Eleventh Circuit in *In re Rawson Food Service, Inc*., 846 F.2d 1343, 1349 (11th Cir.1988) held that "[a] defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." Further, and in conjunction with the Eleventh Circuit decision in *Rawson*, when a defendant's assertion is actually (i) a denial rather than an affirmative defense, which was (ii) already denied in the answer to the complaint, the court will strike the alleged affirmative defense for being redundant. *Wiemer v. Felberbaum & Associates P.A. v. ADP Totalsource III, Inc*., 2008 WL 299016 (S.D.Fla. 2008).

     **C.**    **The demand for attorney's fees and costs must be stricken.**

The Affirmative Defenses of the Defendants concludes with an improper demand for attorneys' fees and costs.  A prevailing defendant is not entitled to attorneys' fees unless the litigation was brought in bad faith.  *Turlington v. Atlanta Gas Light Co.,*135 F.3d 1428, 1437 (11th Cir. 1998), cert. denied, 525 U.S. 962 (1998).  See also,  *Biler v. Café Luna of Naples, Inc., et al,* Case No: 2:14-cv-659-FtM-29DNF (2015)  ("A request for attorneys' fees does not respond to the allegations of the Complaint and does not raise any facts to vitiate Plaintiff's claims. Therefore, it is not a viable defense and will be stricken.")

III.    **Conclusion.**

For the preceding reasons, Plaintiff therefore seeks an Order of the Court as requested herein.

Respectfully submitted,

*Avery S. Chapman*

Avery S. Chapman, Esq.
FL Bar No. 517321
CHAPMAN LAW GROUP, PLC
12008 South Shore Blvd., Suite 105
Wellington, FL 33414
(Tel.) 561.753.5996
(Fax) 561.828.2852
asc@chapmanlawgroup.net
teh@chapmanlawgroup.net


*John J. Pappas Sr*

John J. Pappas, Sr., Esq.
Illinois Bar No. 2141493
*admitted pro hac vice*
The Pappas Law Group LLC
121 West Wacker Drive, Suite 3400
Chicago, Illinois 60601
jjp@pappaslawgroup.com

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that on the date appearing on the first page of this document, I electronically filed the foregoing with the document with the Clerk of the Court using the CM/ECF filing system which then served on all counsel of record or pro se parties.

*Avery S. Chapman*
Avery S. Chapman, Esq.

C. Wade Bowden
John K. Londot, Esq.
Michael H. Moody, Esq.
Greenberg Traurig, P.A.
777 S. Flagler Dr.
Suite 300E
West Palm Beach, FL 33401

| | |
|---|---|
| bowdenw@gtlaw.com | hoffmanm@gtlaw.com |
| flservice@gtlaw.com | moodym@gtlaw.com |
| londotj@gtlaw.com | trammellc@gtlaw.com |