UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-80581-MATTHEWMAN

PLAIN BAY SALES, LLC,

    Plaintiff and Counter-Defendant,

vs.

ZUME GALLAHER AND
PAUL HAUNERT,

    Defendants, Counterclaimants,
    and Third-Party Plaintiffs,

v.

KATIE PRUDENT, ADAM PRUDENT,
HENRI PRUDENT, AND KATIE
MONAHAN, INC.,

    Third-Party Defendants.
_____/

FILED BY KJZ D.C.
Feb 25, 2022
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER ON DEFENDANTS' MOTION TO EXCLUDE OR LIMIT OPINIONS OF TIMOTHY R. OBER, D.V.M. [DE 447] AND ON THE PLAIN BAY PARTIES' MOTION TO EXCLUDE CERTAIN OPINIONS AND CORRESPONDING TESTIMONY OF DEFENDANTS' EXPERT DR. GEOFFREY T. VERNON [DE 452]

THIS CAUSE is before the Court upon Defendants/Counterclaimants/Third-Party Plaintiffs, Zume Gallaher ("Zume") and Paul Haunert's ("Paul") (together, "Defendants") Motion to Exclude or Limit Opinions of Timothy R. Ober, D.V.M. [DE 447] and Plaintiff/Counter-Defendant Plain Bay Sales, LLC, ("Plain Bay"), and Counter and Third-Party Defendants, Katie Prudent Adam Prudent, Henri Prudent, and Katie Monahan, Inc.'s (collectively, the "Plain Bay

1

Parties") Motion to Exclude Certain Opinions and Corresponding Testimony of Defendants' Expert Dr. Geoffrey T. Vernon [DE 452]. The motions are fully briefed. *See* DEs 476, 503, 470, 520. The Court held a hearing on the motions via Zoom video teleconference on February 22, 2022. The matters are now ripe for review. The Court has carefully considered the parties' written submissions, the parties' oral argument at the hearing, the record, and applicable law.[1]

## I.     INTRODUCTION AND BACKGROUND

This case revolves around the alleged sale of a horse, Victorio 5 ("Victorio" or "the Horse"), in the amount of $950,000.00. The Horse was allegedly purchased on March 15, 2018 from Plain Bay by Zume with the assistance of Zume's agent and trainer, Paul, who is also a party to this case.

Prior to the alleged March 15, 2018 purchase, on March 9, 2018, a veterinarian engaged by Defendants (the buyers), Dr. Jorge Gomez, conducted a pre-purchase examination of the Horse. The parties do not seem to dispute that Dr. Gomez asked several specific questions about the Horse's veterinary history and was apparently told that the Horse had never been "treated for EPM," did not have "any history of respiratory problems," did not have "a history of recurring lameness," and did not have "any other pertinent medical history." The parties also do not seem to dispute that, at the time of the examination and report, the result of the pre-purchase examination of the Horse by Dr. Gomez was satisfactory to Paul, Nicole, Cindy, Zume, and Dr. Vazquez (Zume's primary California based veterinarian). However, the parties do vigorously dispute

---

[1] The Court is considering the *Daubert* motions as to both veterinarian experts of the parties in one order for the purposes of judicial economy. However, the Court has considered each expert and each motion individually.

whether the Plain Bay Parties gave Dr. Gomez an accurate and complete medical history of the Horse and whether the Plain Bay Parties provided accurate and complete information in response to Dr. Gomez's pre-purchase examination questions. As a result of these factual disputes, the parties disagree as to whether the pre-purchase inspection of the Horse was accurate and whether certain misrepresentations or omissions were made to Dr. Gomez by the Plain Bay Parties.

Accordingly, a primary issue in this case is whether the Plain Bay Parties made material misrepresentations or omissions to Dr. Gomez, or to Defendants, and if so, whether the veterinarian records of the Horse shed any light on that determination. However, Dr. Gomez has not been timely and properly listed and disclosed as an expert witness in this case and he is accordingly not permitted to offer any Rule 26 expert opinions. [DE 537 at 6]. However, Defendants seek to call Dr. Vernon to opine on the veterinary records of the Horse and seemingly the health of the Horse during its entire life. The Plain Bay Parties have listed Dr. Ober as their veterinarian, although at oral argument their counsel argued that Defendants never sought a refund of the $950,000.00 purchase price in March 2018 based on medical issues of the Horse and therefore no veterinarian experts are necessary or relevant. The Plain Bay Parties' counsel stated at oral argument that they are calling their veterinarian expert, Dr. Ober, because Defendants have injected veterinary or medical issues of the Horse into the case and Defendants are calling a veterinarian expert, Dr. Vernon. Therefore, the Plain Bay Parties have noticed their own veterinary expert, Dr. Ober.

In their competing motions, the parties attack each other's veterinarian expert. Specifically, Defendants attack the Plain Bay Parties' veterinarian expert, Dr. Timothy Ober, while the Plain Bay Parties attack Defendants' veterinarian expert, Dr. Geoffrey T. Vernon. The parties'

3

challenges to each other's veterinarian expert are discussed below.

### A. **Defendants'** *Daubert* **Challenge to Dr. Ober [DE 447]**

First, Defendants' Motion [DE 447] is somewhat confusing. To begin with, in the heading of their motion, Defendants state that they are seeking to "exclude or limit" certain opinions and testimony of Dr. Timothy R. Ober, the Plain Bay Parties' Veterinarian expert. [DE 447 at 1]. However, in the first paragraph of their Motion, Defendants state that they are seeking to exclude all of Dr. Ober's opinions. *Id.* Defendants' Motion does not specify or clarify how Dr. Ober's opinions should be "limited." [DE 447].

Second, in the body of their Motion, Defendants first assert that the Plain Bay Parties proffered Dr. Ober to testify that the Horse's veterinary treatment and care prior to March 15, 2018 (the date Zume signed the Bill of Sale for the Horse) were "normal." [DE 447 at 2]. Defendants then later expand on this and assert that Dr. Ober's opinion letter opines that the veterinary records from July 2016 through June 2020 indicate no injury, lameness, or chronic problem that would prevent the Horse from training or competing; that the veterinary care the Horse received is well within the range of normal management, appropriate and typical supportive care physical therapy and treatment for a horse actively competing as an upper-level jumper; and that the Horse has been well cared for, without significant injury and in fit condition to compete at a high level of performance since the original purchase by Plain Bay sales in 2016. *Id.* at 4].

Third, Defendants argue that Dr. Ober does not utilize any reliable methodology, he relied on incomplete records, and his report is only two pages long and insufficient. [DE 447-1 at 2-7]. Defendants also argue that Dr. Ober's opinions are not based on sufficient facts or data. [DE 447

4

at 7-10]. Finally, Defendants argue that his opinions are not helpful, and should also be excluded under Federal Rule of Evidence 403. *Id.* at 10-12].

In response, the Plain Bay Parties assert that Defendants have injected the veterinary records and history of the Horse as an issue in this case, and therefore, Plaintiff had Dr. Ober review Victorio's records to opine as to the health of the Horse. [DE 476 at 1-2]. They argue that Defendants' Motion is not credible. The Plain Bay Parties argue that Dr. Ober's opinions are reliable, relevant, helpful, not unfairly prejudicial, and based on an extensive review of Victorio's medical records, that he used reliable principles or methodology, and he is a highly qualified veterinarian.

Defendants reply that the Plain Bay Parties "misrepresent" the scope and nature of Dr. Ober's review. [DE 503 at 1]. Defendants argue that Dr. Ober relied on incomplete and inaccurate information and made erroneous assumptions, although they do not dispute that Dr. Ober is qualified as a veterinary expert. *Id.* at 2-4.

### B. The Plain Bay Parties' *Daubert* Challenge to Dr. Vernon [DE 452]

In their motion [DE 452], the Plain Bay Parties seek to exclude certain opinions and testimony of Dr. Geoffrey T. Vernon, Defendants' veterinary expert. They claim that Dr. Vernon completed an incredibly lengthy report, and that Defendants want him to opine as to all sorts of improper areas of testimony. The Plain Bay Parties specifically list 14 categories of his opinions or testimony that they want excluded. Among other objections, the Plain Bay Parties contend that Dr. Vernon only treats horses and is not qualified to opine on pre-purchase exams, seller disclosure pertaining to pre-purchase examinations, and the impact of seller disclosures on prepurchase examinations; that he improperly makes legal conclusions and opines on alleged

5

misrepresentations by the Plain Bay Parties; that his opinions are unsupported; and that Dr. Vernon improperly opines about misrepresentations and omissions made by the Plain Bay Parties.

In response, Defendants explain that Dr. Vernon will testify that Victorio was treated for EPM in 2017 and for Lyme Disease in 2016, and that the Horse's conditions caused him pain and discomfort which impacted his performance and behavior. [DE 470]. Defendants intend to have Dr. Vernon testify that the Plain Bay Parties did not accurately report Victorio's ability to compete. Defendants also want him to testify that he disputes two findings of the Plain Bay Parties' expert that, from July 2016 to July 2018, the care rendered to Victorio was unremarkable and within the normal management of a jumper competing at the upper levels, and that the records show no issues that could possibly impact Victorio's performance. Finally, Defendants want Dr. Vernon to opine on the findings made by Dr. Gomez in Dr. Gomez's pre-purchase exam of the horse regarding the sale at issue in this case.

In reply, the Plain Bay Parties assert that the entire counterclaim and third-party claim of Defendants rest not on Victorio's medical condition, but upon the suitability requirements set forth by Paul, and that the claims do not allege a failure to disclose the health condition of the Horse. [DE 520].

## II.     RELEVANT LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A party that proffers the testimony of an expert under Rule 702 bears the burden of laying the proper foundation and demonstrating admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). The Eleventh Circuit "has previously held that expert testimony may be admitted

if three requirements are met. First, the expert must be qualified to testify competently regarding the matter he or she intends to address. Second, the methodology used must be sufficiently reliable as determined by a *Daubert* inquiry. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010); *see also Horrillo v. Cook Inc.*, No. 08-60931-CIV, 2014 WL 2708498, at *2 (S.D. Fla. June 6, 2014); *Southpoint Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 19-CV-61365, 2020 WL 3581611, at *2-3 (S.D. Fla. July 1, 2020) (J. Bloom) (setting forth a clear and detailed summary of the law under *Daubert* and Federal Rule of Evidence 702).[2]

The judge plays a "gatekeeping" role in determining admissibility. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993). However, this gatekeeping role "is not intended to supplant the adversary system or the role of the jury." *Southpoint Condo. Ass'n, Inc.*, 2020 WL 3581611, at *3 (quoting *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)) (citations omitted)). A district court enjoys "considerable leeway" in making determinations regarding the admissibility of expert testimony and the reliability of an expert opinion. *United States v. Frazier*, 387 F.3d 1244, 1258–59 (11th Cir. 2004) (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999)).

Federal Rule of Evidence 403 states, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

---

[2] The undersigned notes that United States District Judge Beth Bloom's opinion in *Southpoint* discussing the manner in which *Daubert* and Rule 702 are to be applied in federal court, and applicable legal principles, is an excellent and concise recitation of *Daubert* principles and law, which the Court adopts herein.

### III.   ANALYSIS AND RULINGS

As an initial matter, the Court is not going to permit any party to admit written expert reports into evidence. Neither Dr. Ober's written report nor Dr. Vernon's written report shall be shown to or submitted to the jury at trial. Therefore, to the extent the parties object to language or opinions in the expert reports, those objections are moot. Only oral expert testimony will be presented at trial.

The Court next finds that Dr. Ober and Dr. Vernon are both qualified to testify competently regarding certain limited matters pertaining to the relevant health of the Horse on the date of the pre-purchase examination and on or about March 15, 2018. Both experts have extensive experience as veterinarians and neither expert will be entirely excluded in this case. Second, the methodology used by both Dr. Ober and Dr. Vernon is also sufficiently reliable as determined after a *Daubert* inquiry. After carefully reviewing the credentials, methodology, reliability, and opinions of both experts, the Court finds them both to be appropriate experts within their limited area of veterinary expertise. Third, their testimony, as limited by the Court, will assist the trier of fact through the application of their expertise to understand the evidence or determine a fact in issue.

However, the Court shall, as part of its gate-keeping role under *Daubert*, limit the testimony and opinions of both veterinarian experts. The Court finds that many of the proposed opinions of both Dr. Ober and Dr. Vernon are not relevant to the pending claims and defenses, and are more unfairly prejudicial than probative, pursuant to Federal Rule of Evidence 403. Therefore, the Court now turns to the opinions and testimony of both experts that will be excluded.

First, both Dr. Ober and Dr. Vernon will not be permitted to opine as to the general veterinary care and treatment of the Horse throughout his lifetime, and they shall not testify as to

the entirety of the Horse's veterinary records spanning several years before and after the March 15, 2018 transaction, as the entirety of those veterinary records are simply not relevant to this litigation. Their opinions must relate primarily to the questions asked by Dr. Gomez during his pre-purchase examination and whether the veterinary records of the Horse relate to the corresponding answers given in response by the Plain Bay parties.

This case is about whether specific, limited alleged misrepresentations or omissions were made by the Plain Bay Parties, and the Court will allow the two veterinarian experts to opine on the relevant veterinary records which shed a probative light on this disputed issue in this case. It is undisputed that the Defendants were initially quite satisfied with the pre-purchase examination and were quite satisfied with the Horse. In fact, the Defendants were so satisfied with the Horse that they promptly wired the entire $950,000.00 purchase price to Plain Bay. Shortly thereafter, however, the Defendants requested return of their purchase monies and it seems to be their position that the information provided by the Plain Bay parties to Dr. Gomez (and to Defendants) was inaccurate or incomplete.

Simply stated, this is not a lawsuit about negligent care and treatment of the Horse, or negligent veterinary care. The Court is not going to allow Dr. Vernon and Dr. Ober to spend countless hours opining as to irrelevant veterinary records of Victorio spanning many years before and after the relevant transaction. Such testimony is not relevant to this lawsuit. To the extent it is arguably relevant, it is precluded by Federal Rule of Evidence 403. As noted in the Court's prior Omnibus Order [DE 537 at 3] on the Plain Bay Parties' Omnibus Motion *in Limine*,

> The Court will likely allow the admission of limited and targeted veterinary records if, at trial, they are deemed to be relevant and probative to the claims and defenses currently pending in this case in light of the Court's Summary Judgment Order. [DE 534]. For instance, to the extent that Victorio's pre-March 2018 veterinary

9

> records may be relevant to either prove or disprove an alleged false assertion or omission made by the Plain Bay Parties to Defendants or Dr. Gomez within the parameters of the remaining claims and defenses, such veterinary records may potentially be admissible once the alleged misrepresentations or omissions are established before the jury, and to the extent such veterinary records are not too remote, attenuated, or unduly speculative.

[DE 537, p.3]. Likewise, to the extent a proper predicate is laid at trial to admit any such veterinary records of the Horse, the Court will allow Dr. Vernon and Dr. Ober to opine as to their expert interpretation of those limited veterinary records as they relate to the pending claims to be determined by the jury.

Second, both Dr. Ober and Dr. Vernon shall not be permitted to opine as to any other veterinarian's conduct of a pre-purchase examination as it is simply not relevant to the issues to be tried in this lawsuit. For example, Dr. Gomez (who conducted the pre-purchase examination of Victorio prior to the purchase and sale transaction at issue in this lawsuit) is not a party to this lawsuit and is not being sued for allegedly conducting a negligent pre-purchase examination of Victorio. There is simply no relevance in having Dr. Ober and Dr. Vernon opine as to the propriety or impropriety of Dr. Gomez's pre-purchase examination. And, to the extent such opinions might arguably be relevant, they are prohibited by Federal Rule of Evidence 403, as any probative value of such opinions or testimony is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.

Third, both Dr. Ober and Dr. Vernon shall not be permitted to opine on the intent of any party to this case, whether any party made "misrepresentations" or "omissions," or that any party's answers are illustrative of their habitual lack of disclosure. Similarly, both Dr. Ober and Dr. Vernon cannot testify that the Plain Bay Parties did not accurately report Victorio's ability to compete. This will be excluded as it is not a proper expert opinion, comments on intent, and is

violative of Rule 403.

## IV.   CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Exclude or Limit Opinions of Timothy R. Ober, D.V.M. [DE 447] is **GRANTED IN PART AND DENIED IN PART**, as further specified above. Additionally, the Plain Bay Parties' Motion to Exclude Certain Opinions and Corresponding Testimony of Defendants' Expert Dr. Geoffrey T. Vernon [DE 452] is **GRANTED IN PART AND DENIED IN PART**, as further specified above.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of February, 2022.

*William Matthewman*
WILLIAM MATTHEWMAN
United States Magistrate Judge