UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-80581-MATTHEWMAN

PLAIN BAY SALES, LLC,

    Plaintiff and Counter-Defendant,

vs.

ZUME GALLAHER AND
PAUL HAUNERT,

    Defendants, Counterclaimants,
    and Third-Party Plaintiffs,

v.

KATIE PRUDENT, ADAM PRUDENT,
HENRI PRUDENT, AND KATIE
MONAHAN, INC.,

    Third-Party Defendants.
_____/

FILED BY KJZ D.C.
Feb 25, 2022
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE OR LIMIT OPINIONS OF DIANNE D. GROD [DE 464]

THIS CAUSE is before the Court upon Defendants/Counterclaimants/Third-Party Plaintiffs, Zume Gallaher ("Zume") and Paul Haunert's ("Paul") (together, "Defendants") Motion to Exclude or Limit Opinions of Dianne D. Grod ("Motion") [DE 464]. Plaintiff/Counter-Defendant Plain Bay Sales, LLC, ("Plain Bay"), and Counter and Third-Party Defendants, Katie Prudent Adam Prudent, Henri Prudent, and Katie Monahan, Inc.'s (collectively, the "Plain Bay Parties") responded in opposition, and the Motion is fully briefed. *See* DEs 464, 481, 505. The Court held a hearing on the Motion via Zoom video teleconference on February 22, 2022. The Motion is ripe for review. The Court has carefully considered the parties' written submissions, the

1

parties' oral argument at the hearing, the record, and applicable law. For the reasons explained below, Defendants' Motion to Exclude or Limit Opinions of Dianne D. Grod [DE 464] is **GRANTED**.

## I. INTRODUCTION AND BACKGROUND

This case revolves around the alleged sale of a horse, Victorio 5 ("Victorio" or "the Horse"), in the amount of $950,000.00. The Horse was allegedly purchased on March 15, 2018 from Plain Bay by Zume with the assistance of Zume's agent and trainer, Paul, who is also a party to this case. Ultimately, after the full purchase price was paid by or on behalf of Zume, she did not take delivery of Victorio and requested a refund of the sale price, which refund was refused. A few months later, in July 2018, Plain Bay sold Victorio for $500,000 to another buyer. The Plain Bay Parties have pending breach of contract claims against Defendants, and Defendants have pending counterclaims/third-party claims against the Plain Bay Parties for breach of warranties and FDUTPA. The Plain Bay Parties designated Ms. Dianne Grod to provide an expert opinion on the appraised value of the Horse at two points in time: March 15, 2018 and November 2, 2020.

According to Defendants' Motion, the problems with Ms. Grod's report, opinions, and testimony warrant a full exclusion. [DE 464]. Specifically, Defendants argue that (1) Ms. Grod's opinion as to the value of the Horse is irrelevant and does not help the trier of fact; (2) Ms. Grod's opinions are not sufficiently reliable because (a) her report lacks any explanation as to the methodology used to reach her conclusions and lacks any analysis of how the information she reviewed, or her personal knowledge, led Ms. Grod to the ultimate conclusions in her report; (b) her deposition testimony did not cure the report's deficiencies but emphasized the unreliability of her methodology; (3) Ms. Grod is not qualified to competently testify; and (4) any value to Ms. Grod's opinion and testimony is substantially outweighed by unfair prejudice and confusion of the

issues. The Motion also points out, *inter alia,* that Ms. Grod lost her file on this appraisal that included her notes and could not identify what material she reviewed and considered in reaching the opinions expressed in her report.

In response, the Plain Bay Parties assert that Defendants have injected the market value and monetary value of Victorio into this case by bringing FDUTPA claims, which require Defendants to prove actual damages. [DE 481]. Additionally, the Plain Bay Parties contend that Defendants have pursued an alternative theory of damages, *i.e.*, that Victorio was "valueless" to Zume as delivered. The Plain Bay Parties argue that the valuation of a high-performance horse is highly specialized, and that Ms. Grod should opine on the value of the Horse at the time it was purchased. The Plain Bay Parties also explain Ms. Grod's methodology, which they claim is based on a reliable foundation. The Plain Bay Parties concede, however, that Ms. Grod lost her paper file.

In reply, Defendants reiterate that Ms. Grod's opinions are unreliable and that she failed to follow appraisal standards. [DE 505]. The reply highlights Ms. Grod's testimony to point out the unreliability of her opinions, including, *inter alia*, that she has never done a valuation like the one she was asked to do in this case; the methodology she used – "pure economic value" – is not an established valuation method; she relied on information provided by Katie Prudent; she did not independently verify the information she based her opinion upon; and she is a friend of Katie Prudent and has some negative history with the Haunerts.

## II.     RELEVANT LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A party that proffers the testimony of an expert under Rule 702 bears the burden of laying the proper foundation and demonstrating admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*,

3

400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). The Eleventh Circuit "has previously held that expert testimony may be admitted if three requirements are met. First, the expert must be qualified to testify competently regarding the matter he or she intends to address. Second, the methodology used must be sufficiently reliable as determined by a *Daubert* inquiry. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010); *see also Horrillo v. Cook Inc.*, No. 08-60931-CIV, 2014 WL 2708498, at *2 (S.D. Fla. June 6, 2014); *Southpoint Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 19-CV-61365, 2020 WL 3581611, at *2-3 (S.D. Fla. July 1, 2020) (J. Bloom) (setting forth a clear and detailed summary of the law under *Daubert* and Federal Rule of Evidence 702).[1]

The judge plays a "gatekeeping" role in determining admissibility. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993). However, this gatekeeping role "is not intended to supplant the adversary system or the role of the jury." *Southpoint Condo. Ass'n, Inc.*, 2020 WL 3581611, at *3 (quoting *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)) (citations omitted)). A district court enjoys "considerable leeway" in making determinations regarding the admissibility of expert testimony and the reliability of an expert opinion. *United States v. Frazier*, 387 F.3d 1244, 1258–59 (11th Cir. 2004) (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999)).

Federal Rule of Evidence 403 states, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair

---

[1] The undersigned notes that United States District Judge Beth Bloom's opinion in *Southpoint* discussing the manner in which *Daubert* and Rule 702 are to be applied in federal court, and applicable legal principles, is an excellent and concise recitation of *Daubert* principles and law, which the Court adopts herein.

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### III.    ANALYSIS

The Court has reviewed Ms. Grod's three-page report of her assessment of the Horse's value. [DE 464-1]. In it, Ms. Grod essentially opines that the Horse's fair market value on March 15, 2018 was "easily worth $950k plus" and the value of the Horse as of November 2020 "to be $1.5M." *Id.*

First, the value of the Horse in November 2020 is not relevant to the claims and defenses in this case. There is no dispute that the transaction at issue in this lawsuit occurred on March 15, 2018, that the Plain Bay Parties subsequently sold the Horse to Abigail McArdle's family in July 2018, and there is simply no connection or nexus in this case to November 2020. The fact that Ms. Grod issued her report in November 2020 does not make the value of the Horse in November 2020 relevant. Thus, any evidence or testimony regarding the value of the Horse in November 2020 shall not be admissible at trial, as it is irrelevant and violative of Federal Rule of Evidence 403.

Second, throughout Ms. Grod's report, she concludes that the Horse's fair market value on March 15, 2018 was "easily worth $950k plus[.]" [DE 464-1 ("I find it reasonable to give a fair market value sales price of the [H]orse solely on economic model at $950k plus."); (The Horse "was certainly worth a fair market value of $950k plus in March 2018."); ("I find that $950k is a fair market valuation of a horse that was well within the price point of that type of horse and that type of rider in March 2018."); ("Again, based upon my knowledge, interviews and comparable sales in 2018 I find that the horse VICTORIO 5 had a fair market value of at least $950k."). But then, out of nowhere, Ms. Grod concludes at the end of her report as follows: "In conclusion, VICTORIO 5 was not only worth his asking price of $950k but somewhat in the area of 1.2M in

5

2018[.]" *Id*. at 3.

Her conclusion that Victorio was worth $1.2 million is clearly not supported anywhere in her report. Ms. Grod's report lacks any explanation as to the methodology used to reach her $1.2 million conclusion. The report also lacks any analysis of how the information she reviewed, or her personal knowledge, led Ms. Grod to the ultimate $1.2 million conclusion. A review of the deposition transcript of Ms. Grod offers no clarity as to her $1.2 million conclusion either. [DE 464-2]. Seemingly the $1.2 million conclusion came from the sale of another horse, Carat Desire, for $1.2 million. But Ms. Grod testified that she only knew some basic facts about Carat Desire which she obtained from either the trainer or agent of the horse and did not review veterinary information or videos of Carat Desire. She also could not testify as to the details of the transaction of Carat Desire for $1.2 million and only could testify that the horse sold for $1.2 million as reported by either the trainer or agent of the horse. The Court finds that the methodology used by Ms. Grod to achieve the ultimate $1.2 million conclusion is clearly not sufficiently reliable. The Court finds that her opinion in this regard does not pass muster under the *Daubert* standard.

That leaves only Ms. Grod's conclusion that the Horse had a "fair market value of at least $950k" in March of 2018. The Court does not see a reliable methodology underpinning Ms. Grod's opinion in regard to her "at least 950k" opinion in March of 2018. The Court finds that the Plain Bay Parties have not established that Ms. Grod used a reliable methodology in reaching her opinion in this regard. There is insufficient support for her opinions. The Court also does not see how her opinions would assist the jury. Here, it is undisputed that Defendants agreed to purchase the Horse for $950,000 and that Plain Bay Parties accepted that purchase price. Because the $950,000 purchase price is not contested by the parties, Ms. Grod's testimony does not "assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue"

and shall be excluded.

In fact, Ms. Grod's testimony would likely only confuse the jury and could unfairly prejudice both sides here, pursuant to Federal Rule of Evidence 403. For instance, Ms. Grod testified that she "lost her file" on this appraisal that included her notes [DE 464-2 at 35:1-12; 38:1-7, 38:11-19, 53:2-5]; most of the information she relied on in forming her opinions about Victorio came from Katie Prudent—a party to this case and a friend of Ms. Grod's for 50 years [DE 464-2 at 50:20-25; 102:11-15; 103:18-23; 104:3-4, 11-18, 107:6-14; 114:22-25; 115-116; 137:9-17]; and, according to Ms. Grod, a horse might be worth a million dollars to one person but might be worthless to another person [DE 464-2 at 214:6-215:11]. Because Ms. Grod's opinion that the Horse was worth $950,000 in March of 2018 is completely unnecessary in this case, and because all her opinions are simply unsupported and not reliable, her testimony is wholly excluded from trial.

## IV. CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Exclude or Limit Opinions of Dianne D. Grod [DE 464] is **GRANTED**, as further specified above. Ms. Grod's opinion testimony is **EXCLUDED**.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of February, 2022.

*William Matthewman*
WILLIAM MATTHEWMAN
United States Magistrate Judge